UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-10184-RGS

ALAN CARNEY, INDIVIDUALLY, DIRECTLY, AND DERIVATIVELY, AS
HE IS A SHAREHOLDER OF OAK SQUARE DEVELOPMENT
CORPORATION

v.

MARK SIBBERNSEN AND HOME INSTEAD, INC.

MEMORANDUM AND ORDER ON DEFENDANTS'
MOTIONS TO DISMISS OR TRANSFER VENUE

May 7, 2012

STEARNS, D.J.

Alan Carney, both in his individual capacity and derivatively as the shareholder of Oak Square Development Corporation, brought this lawsuit against Home Instead, Inc. and Mark Sibbernsen, alleging breach of contract, negligence, breach of implied contract, and violation of Mass. Gen. Laws ch. 93A. Carney, through Oak Square, is a franchisee of Home Instead. Carney's claims relate to a Settlement Agreement and a Durable Power of Attorney (POA), both of which were executed in March of 2011, after Carney was found in breach of his Franchise Agreement. Home Instead and Sibbernsen now move to dismiss or, in the alternative, to transfer venue to the District

of Nebraska.[1]  Carney opposes the motion.

## BACKGROUND

Home Instead is a Nebraska corporation in the business of franchising non-medical home care service agencies, with over 900 franchises worldwide. Oak Square operated one such franchise in Norwell, Massachusetts. Carney is the sole officer, director, and shareholder of Oak Square. The Franchise Agreement, executed by Home Instead and Carney on February 6, 2003, contains two pertinent provisions.

> F.    GOVERNING LAW
>
> To the extent not inconsistent with applicable law, this Agreement and the offer and sale of the Franchise is governed by the substantive laws (and expressly excluding the choice of law) of the State of Nebraska.
>
> G.    EXCLUSIVE JURISDICTION
>
> Franchisee and Franchisor agree that any action *arising out of or relating to* this Agreement (including the offer and sale of the Franchise) shall be instituted and maintained only in a state or federal court of general jurisdiction in Douglas County, Nebraska, and Franchisee irrevocably submits to the jurisdiction of that court and waives any objection he/she may have to either the jurisdiction or venue of the court.

Pl.'s Ex. A at 34 (emphasis added).

On March 7, 2011, after conducting a compliance audit of Oak Square, Home

---

[1] Home Instead and Sibbernsen request oral argument. The court does not believe oral argument would assist it in reaching a decision.

Instead informed Carney that it had identified deficiencies and intended to terminate the Franchise Agreement immediately unless Carney entered into a Settlement Agreement. That same day, Home Instead filed a complaint against Oak Square and Carney in the United States District Court for the District of Nebraska, seeking a declaratory judgment and damages for Carney's alleged breach. Carney and Home Instead executed the written Settlement Agreement on March 16, 2011, and Home Instead voluntarily dismissed the Nebraska Lawsuit.

Under the terms of the Settlement Agreement, termination of the Franchise Agreement was suspended for a "cleansing" period during which Oak Square was to be prepared for sale, and a "sale period" during which Oak Square was to be sold. Pursuant to the Settlement Agreement, Carney executed the POA, appointing Sibbernsen as his power of attorney during the cleansing and sale periods. The Settlement Agreement does not contain a forum selection clause or a choice-of-law provision. The POA also has no forum selection clause, but does contain the following choice-of-law provision: "All questions pertaining to the validity, interpretation and administration of this Durable Power of Attorney shall be determined in accordance with the laws of the State of Massachusetts." Pl.'s Ex. D at 4.

After a number of extensions, the sale period expired on January 31, 2012, without Oak Square being sold. That same day, Carney brought this lawsuit against

3

Home Instead and Sibbernsen in the District of Massachusetts.

## DISCUSSION

Home Instead and Sibbernsen argue that Carney's Complaint should be dismissed or transferred to the District of Nebraska according to the terms of the Franchise Agreement's forum selection clause. Carney insists that the Franchise Agreement is inapplicable because his Complaint is grounded on the Settlement Agreement and the POA.[2]

Resolution of the dispute comes down to the proper interpretation of the phrase "any action arising out of or relating to" as set out in the Franchise Agreement. Because the Franchise Agreement also contains a choice-of-law provision ("this Agreement . . . is governed by the substantive laws . . . of the State of Nebraska"), Nebraska law is controlling. The phrase "arising out of or relating to" is one borrowed from the law of insurance. In this context, the Supreme Court of Nebraska has defined

---

[2] Carney also maintains that the Nebraska District Court has already determined the issue in his favor. This is something of a stretch. After Carney filed this action, Home Instead attempted to obtain relief from the dismissal of the Nebraska Lawsuit under Fed. R. Civ. P. 60(b)(6). The Nebraska court concluded that no exceptional circumstances existed to justify extraordinary relief under Rule 60(b)(6), and the motion was denied. *See Home Instead, Inc. v. Oak Square Dev. Corp.*, No. 8:11CV84 (D. Neb. Apr. 3, 2012). Given its decision, the court had no reason to discuss the relationship between the Settlement Agreement and the forum selection clause of the Franchise Agreement.

the words "arising out of the use" as "very broad, general, and comprehensive, terms [that] are ordinarily understood to mean originating from, growing out of, or flowing from." *Farmers Union Coop. Ins. Co. v. Allied Prop. and Cas. Ins. Co.*, 569 N.W.2d 436, 439 (Neb. 1997), quoting *Dairyland Ins. Co. v. Esterling*, 290 N.W.2d 209, 212 (Neb. 1980); *see also O'Toole v. Brown*, 422 N.W.2d 350, 353 (Neb. 1988) (interpreting the phrase "arising out of" broadly, requiring nothing more than a mere "causal relationship"); *Nat'l Union Fire Ins. Co. v. Bruecks*, 139 N.W.2d 821, 827 (Neb. 1966) (applying "but for" causation standard to phrase "arising out of the use").

Applying the "but for" causation standard, there can be no question that the dispute over the Settlement Agreement and the POA "arose out of" the Franchise Agreement. Both instruments were created as a means of accomplishing an orderly termination of the Franchise Agreement after Carney was found in breach. But for the existence of the Franchise Agreement, there would be no Settlement Agreement and no POA.

The Supreme Court made it clear in *M/S Bremen* that forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). The Court further held that the mere inconvenience of litigating in a foreign forum (the only consideration applicable here)

5

was an inadequate reason to hold a forum selection clause unenforceable. *Id.* at 16. "[I]t should be incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *Id.* at 15.

In the spirit of *M/S Bremen*, section 1404(a) of Title 28 of the United States Code provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[3] "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to 'an individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988), quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964). Here, justice and fairness dictate that the parties be held to their agreement to

---

[3] Federal common law and Massachusetts law "treat forum selection clauses identically." *Rooney v. Biomet, Inc.*, 63 F. Supp. 2d 126, 127 (D. Mass. 1999), *order vacated on other grounds and reentered as Rooney v. Biomet, Inc.*, 197 F.R.D. 209 (D. Mass. 2000). Therefore, there is no need to decide whether "the forum selection clause is enforceable as 'procedural' and look to a federal test of validity or instead treat it as 'substantive' and look to pertinent state law, starting with the choice of law rules that would be followed by the local court in the jurisdiction where the district court sits." *Rafael Rodriguez Barril, Inc. v. Conbraco Indus., Inc.*, 619 F.3d 90, 92 (1st Cir. 2010).

resolve their dispute in the forum they freely chose, which is the District of Nebraska.[4]

## ORDER

For the foregoing reasons, defendants' motion to transfer venue to the District of Nebraska is <u>ALLOWED</u>.  The Clerk will forward the case file to the Clerk of that Court.

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE

---

[4] Although the forum selection clause, by designating Douglas County (Omaha), Nebraska as the litigating forum, appears to have had the Nebraska state court system in mind, the case could have – consistent with section 1404(a) – been brought in the federal district court on diversity grounds.  It also makes no difference that Carney has brought claims sounding in both tort and contract.  *See Lambert v. Kysar*, 983 F.2d 1110, 1121-1122 (1st Cir. 1993).